**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Agri-Fine, Inc., | ) | Case No. 15-41000 |
| | ) | |
| Debtor. | ) | Honorable Timothy A. Barnes |
| | ) | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM & FINAL ORDERS (I) AUTHORIZING**
**USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION;**
**(III) MODIFYING THE AUTOMATIC STAY TO PERMIT IMPLEMENTATION;**
**(IV) SCHEDULING A FINAL HEARING; & (V) GRANTING RELATED RELIEF**

Agri-Fine, Inc., (the "*Debtor*"), through its proposed counsel, brings this motion (the "*Motion*") for entry of an interim order (the "*Interim Order*"), substantially in the form attached here, and a final order (the "*Final Order*," and together with the Interim Order, the "*Orders*"), (I) authorizing the Debtor to use Cash Collateral; (II) granting adequate protection to Standard Bank and Trust Company solely to the extent of any diminution in the value of its security interests in its prepetition collateral; (III) modifying the automatic stay as necessary to effectuate all of the terms and provisions provided in this Motion; (IV) prescribing the form and manner of notice and setting the time for the l hearing on entry of a Final Order (the "*Final Hearing*"); and (V) granting related relief. In support of this motion, the Debtor respectively submits the *Declaration of Eriksen Hoelzeman,* which has been filed contemporaneously with this Motion.

**JURISDICTION & VENUE**

1.      The Bankruptcy Court exercises jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested in this Motion are §§ 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code (the "*Bankruptcy Code*"), rules

1

2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"),

and rules 4001-1, 4001-2, and 5005-3(D) of the Local Rules of the United States Bankruptcy

Court for the Northern District of Illinois (the "*Local Rules*").

## BACKGROUND

3.      On December 2, 2015 (the "*Petition Date*"), the Debtor filed a voluntary petition

for bankruptcy relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to manage

its financial affairs as a debtor-in-possession.

4.      A detailed description of the Debtor's business and history is set forth in the

Declaration of Eriksen Hoelzeman (the "*Hoelzeman Declaration*"). The Declaration is filed

concurrently with this Motion and is incorporated here by reference.

## OVERVIEW OF THE PREPETITION INDEBTEDNESS

5.      As described in more detail in the Hoelzeman Declaration, the Debtor has three

separate business loans from Standard Bank (collectively, the "*Loans*"):

   a.   2012 Term Note with a balance, as of November 13, 20155, of $97,992.53;

   b.   2013 Term Note with a balance, as of November 13, 2015, of $2,695,444.27; and

   c.   2013 Revolver with a balance, as of November 13, 2015, of $3,499,990.00.

6.      The Loans are documented by various notes, security agreements, and related

documents (the "*Loan Documents*"), are secured by substantially all of the Debtor's assets,

including certain real property owned by the Debtor, and are cross-collateralized.

## RELIEF REQUESTED

7.      The Debtor seeks entry of the Orders granting the following relief: authorizing the

Debtor to use "cash collateral" (as defined in § 363(a) of the Bankruptcy Code, "*Cash

Collateral*") under §§ 361 and 363 of the Bankruptcy Code; granting adequate protection to

Standard Bank under §§ 361, 362, and 363 of the Bankruptcy Code, solely to the extent of

diminution in value of Standard Bank's interest in the Collateral; vacating or modifying the

automatic stay imposed by § 362 of the Bankruptcy Code to the extent necessary to implement

and effectuate the terms provided in this Motion; and (d) granting related relief. In addition, the

Debtor requests that the Court schedule the Final Hearing to consider approval of this Motion on

a final basis.

CONCISE STATEMENT OF THE MATERIAL TERMS OF THE INTERIM ORDER

8.      Under and in accordance with Bankruptcy Rule 4001(b)(1)(B) and Local Rule

4001-2(A)(3), the material provisions of the relief requested in the Interim Order, and the

location of such provisions in the Interim Order, are as follows:

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| Parties with Interest in Cash Collateral:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(i)] | Standard Bank and Trust Company | ¶ 2 |
| Use of Cash Collateral:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(ii)] | Upon entry of the Interim Order, the Debtor is authorized to use Cash Collateral, subject to and solely in accordance with the terms and conditions of the Interim Order. The Debtor will continue to operate in the ordinary course of business consistent with the cash flow forecast used to establish the Budget.[1] | ¶ 2 |
| Duration of Use:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)] | The Debtor's right to use Cash Collateral under the Interim Order will terminate on January 15, 2016 if the Final Order has not been entered prior to that date, or on any such other date established in the Final Order. | ¶ 2 |

---

[1]   Attached here as *Exhibit A*.

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| Events of Default: [Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]  [Local Bankr. R. 4001-2(A)(3)] | The following are Events of Default under the Orders:  • The failure to obtain entry of the Final Order authorizing use of Cash Collateral.  • After the Petition Date, the obtaining of additional indebtedness for borrowed money or guaranties without the written consent of Standard Bank.  • The Debtor allows, incurs, or creates any postpetition lien or security interest against the Collateral other than those granted under the Interim Order, consented to by Standard Bank, or incurred in the ordinary course of business.  • Any reversal, stay, vacatur, revocation, or amendment of the Interim Order without Standard Bank's consent.  • Material variance over four consecutive weeks from the Budget in excess of 10% over a line item scheduled in the Budget or in excess of 10% over the overall Budget.  • Dismissal of the chapter 11 case or conversion of the case to chapter 7 of the Bankruptcy Code.  • The violation by the Debtor of any material term of the Interim Order where such violation remains unremedied for ten (10) business days following receipt by the Debtor from Standard Bank of such violation. | ¶ 9 |

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| Adequate Protection:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iv)] | The Debtor is providing adequate protection to Standard Bank for its interests in the Collateral in the following form:<br><br>• replacement lien to the extent of diminution of value of the Collateral from and after the Petition Date (the "*Diminution*");<br><br>• a superpriority administrative claim under § 507(b) of the Bankruptcy Code solely to the extent of Diminution (the "*Diminution Claim*";<br><br>• preparation and submission to the Budget and related cash flow forecasts<br><br>• stipulation to the amount and validity of Standard Bank's prepetition claims and liens, subject only to the right of an official committee or party in interest to challenge such claims and liens during the Challenge Period | ¶ 4 |
| Priority of Adequate Protection Liens:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iv)] | The adequate protection lien granted to Standard Bank shall be a lien senior in rank and priority to Standard Bank's prepetition lien and all other liens against the Collateral, subject and subordinate only to the Carve Out. | ¶ 4(b) |
| Findings of Fact Binding on the Debtor and Parties in Interest:<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(2)(b); 4001-2(A)(3)] | Subject in all respects to the Challenge Period (as defined in the Interim Order), the Interim Order contains certain stipulations by the Debtor binding on all parties in interest upon the termination date of the Challenge Period, including the Debtor's stipulation as to the amount of Standard Bank's claims as of the Petition Date and the validity of Standard Bank's lien against the Collateral. | ¶ 4(a) |
| Challenge Period<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(2)(b)] | An official committee (if formed) and shall have 60 days from the date of its formation to investigate and challenge the liens and claims of Standard Bank. Any other party in interest shall have 75 days from entry of the Interim Order to investigate and challenge the liens and claims of Standard Bank. In the absence of such challenge, all parties in interest shall be bound by the Findings of Fact related to such liens and claims upon the close of the Challenge Period. | ¶ 13 |

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| Carve Out<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br><br>[Local Bankr. R. 4001-2(A)(2)(f); 4001-2(A)(3)] | As used in the Interim Order, "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under § 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Estate Professional Fees") incurred by persons or firms retained by the Debtor under §§ 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") up to $150,000. | ¶ 11 |
| Waiver/Modification of Automatic Stay<br><br>[Fed. R. Bankr. P. 4001(b)(1)(B)(iii)]<br>[Local Bankr. R. 4001-2(A)(2)(i); 4001-2(A)(3)] | The Debtor seeks authority to modify the automatic stay imposed under § 362(a) of the Bankruptcy Code as necessary to effectuate all of the terms and provisions of the Interim and Final Orders, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and the Diminution Claim; and (b) permit the Debtor to incur liabilities and obligations to Standard Bank authorized by the Interim Order. | ¶ 7 |
| Adequacy of Budget:<br><br>[Local Bankr. R. 4001-2(A)(4)] | The Debtor proposes that the Budget is adequate (inclusive of professional fees and disbursements) considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget. | ¶ 4(d) |

**HIGHLIGHTED PROVISIONS UNDER LOCAL RULE 4001-2(A)(2)**

9.      Local Rule 4001-2(A)(2) requires a debtor to: (a) recite whether the proposed form of the cash collateral order contains certain provisions of the type enumerated therein; (b) identify the location of such provisions in the proposed cash collateral order; and (c) justify the inclusion of such provisions in the proposed cash collateral. With respect to the proposed Interim Order, the Debtor highlights the following provisions:

| Material Terms | Summary of Material Terms | Provision |
|---|---|---|
| **Carve Out:**<br><br>[Local Bankr. R. 4001-2(A)(2)(f)] | The Interim Order contains no carve out for the benefit of professionals retained by a committee appointed by the United States Trustee. The Debtor believes this is justified as the provision of a carve out for such professionals shall be relevant only in the event that a committee is formed and seeks to retain professionals. | ¶ __ |
| **Stay Modification:**<br><br>[Local Bankr. R. 4001-2(A)(2)(i)] | The Interim Order grants Standard Bank relief from the automatic stay without further order of the court to allow the parties to take all actions to implement the terms of the order. The Debtor believes this provision is a justified component of the adequate protection they have proposed to provide Standard Bank in exchange for the right to use Cash Collateral. | ¶ 7 |

**BASIS FOR RELIEF**

A.    **The Debtor's Need for Immediate Access to Cash Collateral.**

10.    The Debtor's access to Cash Collateral is absolutely necessary to preserve and maximize value for the Debtor's stakeholders. *See* (Hoelzeman Dec. ¶¶ 78-80.)

11.    The Debtor's use of Cash Collateral in the ordinary course of business is essential to ensuring smooth, continued operations, including procurement of goods and services from vendors, payment of its employees, and satisfaction of other working capital needs. (*Id.* at ¶ 78.)

12.    Absent approval of the Interim Order, the Debtor will be unable to generate revenue, operate its business, pay the individuals who report to work each day, or fund its reorganization process, resulting in immediate and irreparable harm to the Debtor's estate. (*Id.* at ¶ 79.)

13.    The Debtor, therefore, believes that immediate authority to use Cash Collateral as set forth in this Motion and in the Interim Order is necessary to prevent immediate and irreparable harm to the Debtor's estate. (*Id.* at ¶ 80.)

### B.      Supporting Authority

*Standard Bank's Secured Interest
in the Prepetition Collateral is Adequately Protected.*

14.      The Debtor's use of property of its estates is governed by § 363 of the Bankruptcy

Code, which provides in pertinent part that a debtor in possession "may use property of the estate

in the ordinary course of business without notice or a hearing." *See* 11 U.S.C. § 363(c)(1).

Section 363(c)(2)(A) of the Bankruptcy Code more specifically permits a debtor in possession to

use cash collateral with the consent of the secured party or with court authorization in accordance

with, among other things, § 363(e) of the Bankruptcy Code. Section 363(e) of the Bankruptcy

Code in turn requires that the debtor adequately protect the secured creditors' interest in property

to be used by a debtor against any diminution in value of such interest resulting from the debtor's

use of the property during a chapter 11 case.

15.      Section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of

what may constitute adequate protection under § 363: (1) periodic cash payments; (2) additional

or replacement liens; or (3) any other relief that will result in the party's realization of the

"indubitable equivalent" of its interest in the property. *See* 11 U.S.C § 361. The determination of

whether there is adequate protection requires a fact-specific inquiry and must be decided on a

case-by-case basis. *See* H.R. Rep. No. 595, 95th Cong., 2d Sess. at 339 (1978) (adequate

protection is to be "left to case-by-case interpretation and development."); *see also In re EES*

*Lambert Assocs.*, 62 B.R. 328, 343 (Bankr. N.D. Ill. 1986) (noting the "case by case development

of adequate protection").

16.      In order to facilitate the likelihood of reorganization, courts should be flexible in

the application of the adequate protection afforded to Standard Bank. *See, e.g.*, *In re Martin*, 761

F.2d 472, 476 (8th Cir. 1985) (noting that diminution in value was to be considered a flexible

concept); *In re George Ruggiere Chrysler-Plymouth*, Inc., 727 F.2d 1017, 1019 (10th Cir. 1984)
(explaining the Bankruptcy Code's attempt to balance the protection of a secured creditor's
property interests against a debtor's need to use cash in order to meet daily operating expenses
and promote the "congressional policy favoring rehabilitation over economic failure").

### *The Debtor is Providing a Substantial*
### *Adequate Protection Package to Safeguard Standard Bank's Interests*

17.     The Debtor will provide Standard Bank with a robust adequate protection
package. This adequate protection package includes granting Standard Bank: (a) a replacement
lien on substantially all of the Debtor's assets to the extent there is any diminution in value
("*Diminution*") in Standard Bank's interests; (b) an allowed super-priority administrative claim
to Standard Bank solely to the extent of any Diminution (the "*Diminution Claim*"); (c) an
agreement to operate in the ordinary course consistent with the terms of an agreed-upon cash
flow forecast and Budget; and (d) a stipulation to the amount and validity of Standard Bank's
claim and lien. (Prop. Interim Order ¶ 4).

### *The Adequate Protection Liens Provide*
### *Substantial Additional Value to Standard Bank*

18.     The Debtor will provide Standard Bank with a replacement lien on substantially
all of the Debtor's assets solely to the extent of any Diminution. The adequate protection lien will
be superior in terms of priority and right to Standard Bank's liens and claims under the Loans,
subject and subordinate only to the Carve Out. *Id*. Furthermore, the adequate protection liens
provide Standard Bank with significant value that it may not otherwise be entitled to under the
Loans.

### *The Diminution Claim Protects Against Diminution in Value*

19.     The Debtor will provide Standard Bank with a Diminution Claim under § 507(b) of the Bankruptcy Code. (Prop. Interim Order ¶ 4(c)). This claim will have priority over all administrative expenses of any kind, subject only to the Carve Out.

### *The Debtor will Comply with a Budget Approved by Standard Bank*

20.     The Debtor will continue to operate in the ordinary course of business consistent with agreed-upon cash flow forecast. *See* (Prop. Interim Order ¶ 4(d)). Additionally, the Debtor will deliver financial information necessary to assess the Debtor's short and long term cash flow, and an operating budget to Standard Bank during the interim period. Providing this financial information will ensure that Standard Bank has sufficient information regarding the Debtor's financial performance and will provide assurance about the Debtor's business operations.

### *The Debtor's Use of Cash Collateral will Increase*
### *the Value of Standard Bank's Collateral, Including Cash Collateral*

21.     In addition, the Debtor is providing additional adequate protection because they intend to use the Cash Collateral to operate the business. Courts have held that a secured party's interest in collateral may be adequately protected when a debtor's continued use of such collateral in its operations generates a net positive return. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assocs*. LP, 153 B.R. 204, 214 (N.D. Ill. 1993) (holding that creditor was adequately protected so long as the use of cash collateral went into the maintenance and operation of creditor's underlying collateral); *In re Las Vegas Monorail Co*., 429 B.R. 317, 341 (Bankr. D. Nev. 2010) ("[A debtor's] use of the cash it generates in its operations is itself a form of adequate protection. This is because [the debtor's] continued investment in, and operation of, the monorail will increase, or at least maintain, the collateral's value."). Here, the Debtor's investment of cash into the business not only improves the value of the business, and therefore the prepetition

collateral, but also creates additional Cash Collateral that will be subject to adequate protection liens.

### *The Debtor Will Stipulate to the Amount and Validity of Standard Bank's Claims and Liens*

22.     Finally, as a final component of the adequate protection provided to Standard Bank, the Debtor will stipulate to the amount and validity of Standard Bank's prepetition claims and liens, subject only to the right of an official committee to challenge such claims and liens during the Challenge Period.

### THE INTERIM AND FINAL ORDERS SHOULD BE APPROVED

23.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use Cash Collateral may not be commenced earlier than 14 days after service of such motion. The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 14-day period and to authorize the use of cash collateral where, as here, such relief is necessary to avoid immediate and irreparable harm to the debtor's estate.

24.     In addition, Local Rule 4001-2(B) provides that the court shall not approve interim financing orders that include any of the provisions specified in Local Rule 4001-2(A)(2) "in the absence of extraordinary circumstances."

25.     As set forth in detail here and in the Declaration, without continued use of Cash Collateral, the Debtor will have no ability to operate its business. *See* (Hoelzeman Dec. ¶ 79.) As such, the Debtor respectfully submits that it has satisfied the requirements of Bankruptcy Rule 4001(b) and Local Rule 4001-2(B) to support entry of the Interim Order and immediate Cash Collateral availability pending the entry of the Final Order.

### THE AUTOMATIC STAY SHOULD BE MODIFIED ON A LIMITED BASIS

26.     The proposed Interim Order provides that the automatic stay provisions of § 362 of the Bankruptcy Code will be modified as necessary to effectuate the terms and provisions of the Interim Order. The Interim Order further provides that the automatic stay is modified and vacated to the extent necessary to permit Standard Bank to exercise, upon an event of default under the Interim Order, certain rights and remedies provided for in the Interim Order.

27.     Stay modifications of this kind are ordinary features of adequate protection packages and, in the Debtor's business judgment, are reasonable under the circumstances of this case. Courts in this district have granted similar relief in other recent chapter 11 cases. *See, e.g.*, *In re Ryan Int'l Airlines, Inc.*, No. 12-80802 (Bankr. N.D. Ill. Mar. 7, 2012) (approving stay modification for purposes of implementing cash collateral order and enforcing remedies); *In re XMH Corp. I (f/k/a Hartmarx Corp.)*, No. 09-02046 (Bankr. N.D. Ill. Jan. 26, 2009); *In re Nat'l Terrazzo, I*nc., No. 06-11292 (Bankr. N.D. Ill. Oct. 5, 2006); *In re Mid-City Parking, Inc.*, No. 04-45177 (JPC) (Bankr. N.D. Ill. Jan. 6, 2005).

### REQUEST FOR FINAL HEARING

28.     Under Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2(C), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable following the entry of the Interim Order, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

### NO PRIOR REQUEST

29.     No prior request for the relief sought in this Motion has been made to this or any other court.

**RESERVATION OF RIGHTS**

30.     Except as may otherwise be provided in the Interim Order upon entry, nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under § 365 of the Bankruptcy Code. The Debtor expressly reserves its right to contest any claim related to the relief sought here. Likewise, if the Court grants the relief sought by this Motion, any payment made under an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

**NOTICE**

31.     The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the Debtor's 20 largest unsecured creditors; (c) Standard Bank and Trust Company; (d) the Internal Revenue Service; (e) Illinois Department of Revenue; and (f) any party that has requested notice under Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

*Wherefore*, the Debtor requests that the Court enter the Interim Order, substantially in the form attached here, and a final order, (I) authorizing the Debtor to use Cash Collateral; (II) granting adequate protection to Standard Bank and Trust Company solely to the extent of any diminution in the value of its security interests in its prepetition collateral; (III) modifying the automatic stay as necessary to effectuate all of the terms and provisions provided in this Motion;

13

(IV) prescribing the form and manner of notice and setting the time a hearing entry of a Final

Order; and (V) granting related relief.

Date: December 2, 2015                          *Agri-Fine, Inc.,*


                                                By:  /s/  Jonathan Friedland
                                                        One of its Attorneys

                                                Jonathan P. Friedland, Esq. (IL No. 6257902)
                                                Mark S. Melickian, Esq. (IL No. 6229843)
                                                Elizabeth B. Vandesteeg, Esq. (IL No. 6291426)
                                                Jack O'Connor, Esq. (IL No. 6302674)
                                                **SUGAR FELSENTHAL GRAIS & HAMMER LLP**
                                                30 N. LaSalle St., Ste. 3000
                                                Chicago, Illinois 60602
                                                Telephone:  312.704.9400
                                                Facsimile:   312.372.7951
                                                jfriedland@SugarFGH.com
                                                mmelickian@SugarFGH.com
                                                evandesteeg@SugarFGH.com
                                                joconnor@SugarFGH.com

                                                *Proposed Counsel to the Debtor*