UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re:<br>Agri-Fine, Inc.,<br><br><br>Debtor(s) | BK No.: 15-41000<br><br>Chapter: 11<br>Honorable Timothy A. Barnes |

**Interim Order (I) Authorizing the Debtor to use Cash Collateral; (II) Granting Adequate Protection to Standard Bank and Trust Company; (III) Modifying the Automatic Stay; (IV) Prescribing the Date, Form and Manner of Notice of a Final Hearing; and (V) Granting Related Relief.**

This matter came before the Court on the Debtor's motion (the "Motion") for entry of an interim order (I) authorizing the Debtor to use Cash Collateral; (II) granting adequate protection to Standard Bank and Trust Company solely to the extent of any diminution in the value of its security interests in its prepetition collateral, (III) modifying the automatic stay as necessary to effectuate all of the terms and provisions provided herein; (IV) prescribing the form and manner of notice and setting the time for the final hearing (the "Final Hearing"); and (V) granting related relief; and based upon the declaration filed at dkt. 18; appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and upon all of the proceedings had before the Court; and after due deliberation:

IT IS HEREBY ORDERED

1. The use of the cash collateral of Standard Bank and Trust (the "Cash Collateral") on an interim basis is authorized, subject to the express terms and conditions of this Interim Order. Notwithstanding any applicability of any Bankruptcy Rules or Local Rules, this Interim Order shall be effective immediately upon its entry.

2. Authorization to Use Cash Collateral. Subject to and solely in accordance with the express terms and conditions of this Interim Order, and unless the date is extended by written consent of Standard Bank and Trust Company ("Standard Bank"), the Debtor is hereby authorized to use Cash Collateral on an interim basis solely for the period (the "Specified Period") from the Petition Date through December 18, 2015.

A further hearing on the interim use of Cash Collateral is set for December 17, 2015 at 1:30 PM.

3. Use of Collateral. Subject to and solely in accordance with the terms and conditions of this Interim Order, Cash Collateral may only be used during the Specified Period for working capital and general corporate purposes, to pay costs associated with the Debtor's restructuring, and otherwise in accordance with this Interim Order. The Debtor will continue to operate in the ordinary course of business consistent with the cash flow forecast used to establish the budget as attached this order (the "Budget").

4. Adequate Protection. As consideration for the use of Cash Collateral, the Debtor grants to Standard Bank the following forms of adequate protection:

   a. Debtor's Stipulations.

(i) The Debtor stipulates to the extent, validity, and priority of the loans made by Standard Bank and Trust to the Debtor (the "Loans") and liens granted therein against the Debtor and the Debtor's estate, as of the Petition Date. The Debtor further stipulates that, as of the Petition Date, the principal balance owed by the Debtor on the Loans is $6,293,426.80.

(ii) The stipulations made herein (the "Stipulations") shall be subject to the rights of parties to challenge the extent, amount, priority and validity of the Loan Documents, Loans, and security interests granted therein, and the balance of the Loans, during the Challenge Period (as defined herein).

b.   Adequate Protection Liens. As adequate protection of the interests of Standard Bank in the Collateral, the Debtor grants to Standard Bank, solely to the extent of the diminution in value of Standard Bank's interest in the Collateral from and after the Petition Date (the "Diminution"), a binding, enforceable, non-avoidable, and automatically perfected postpetition security interest in and lien (the "Adequate Protection Lien") on any and all assets and properties, whether now owned or in existence on the Petition Date or thereafter acquired or existing and wherever located, of the Debtor and its estate (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, including, without limitation, all Collateral, cash, cash equivalents, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), Cash Collateral, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies, and capital stock, including, without limitation, the products, proceeds, and supporting obligations thereof, and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (all such property collectively, the "Collateral").

The Adequate Protection Lien shall be deemed a legal, valid, binding, enforceable, and automatically perfected lien.

c.   Diminution Claim.   As further adequate protection, limited to and solely in the amount of any Diminution, Standard Bank is hereby granted an allowed superpriority administrative expense claim in this chapter 11 case and any successor case against the Debtor and its estate, pursuant to sections 503(b) and 507(b) of the Bankruptcy Code (the "Diminution Claim"). The Diminution Claim shall be subject to the Carve Out, and shall be an allowed claim against the Debtor with priority over any and all administrative expenses and all other claims against the Debtor now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment. The Diminution Claim shall be payable from and have recourse to all assets of the Debtor's estate other than Avoidance Actions.

d.   Budget, Reporting and Compliance.   As additional adequate protection, the Debtor shall operate within and comply with the Budget . Compliance shall include operating within the Budget without material variance over four consecutive weeks from the Budget in excess of 10% over a line

item scheduled in the Budget or in excess of 10% over the overall Budget. The Debtor shall provide weekly cash flow and variance reports to Standard Bank and any statutory committee appointed by the United States Trustee in this chapter 11 case.

   5. Access to Records. In addition to, and without limiting, whatever rights to access that Standard Bank has under the Loan Documents, and upon reasonable notice and at reasonable times during normal business hours, the Debtor shall permit Standard Bank and its professional advisors reasonable access to the Debtor's property and Collateral for the purpose of inspection, (ii) to examine the Debtor's books and records, (iii) to conduct reasonable and customary financial due diligence, and (iv) to have reasonable access to, and to discuss the Debtor's affairs, finances, and condition with, the Debtor's senior officers, professionals, and financial advisors, in each case excluding (a) all privileged and attorney-client work product, (b) trade secrets, and (c) information otherwise subject to a third-party confidentiality agreement.

   6. Insurance. At all times the Debtor shall maintain casualty and loss insurance coverage for the Collateral on substantially the same basis as maintained prior to the Petition Date.

   7. Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as of the date hereof as necessary to effectuate all of the terms and provisions of this Interim Order.

   8. Grant and Perfection of Adequate Protection Lien. This Interim Order shall be sufficient and conclusive evidence of the granting, creation, attachment, validity, perfection, and priority of the Adequate Protection Lien without the necessity of (i) obtaining, filing, recording, delivering notice of, or entering into any financing statement, mortgage, copyright security agreement, ship mortgage, aircraft filing, vehicle registration, control agreement, physical possession, notice, or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction, or (ii) the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement and any other action required to obtain "control" or "possession" pursuant to sections 9-104, 9-105, 9-106, 9-107, 9-313 and/or any other provision of the Uniform Commercial Code) to grant, create, attach, validate or perfect (in accordance with applicable nonbankruptcy law) the Adequate Protection Lien, or to entitle Standard Bank to the priorities granted herein. Notwithstanding the foregoing, Standard Bank is authorized to file, as they deem advisable, such financing statements, mortgages, notices of liens, and other instruments or documents to perfect in accordance with applicable nonbankruptcy law or to otherwise evidence the applicable Adequate Protection Lien and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence, or perfect the Adequate Protection Lien or to entitle Standard Bank to the priority granted herein. Standard Bank may file a copy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instruments, or similar documents.

   9. Events of Default. The occurrence and continuation of any of the following events, unless waived by Standard Bank, shall constitute an event of default (each, an "Event of Default"):

   a. The failure to obtain entry of the Final Order authorizing use of Cash Collateral;

   b. After the Petition Date, the obtaining of additional indebtedness for borrowed money or

guaranties without the written consent of Standard Bank;

    c. The Debtor allows, incurs, or creates any postpetition lien or security interest against the Collateral other than those granted pursuant to the Interim Order, consented to by Standard Bank, or incurred in the ordinary course of business;

    d. Any reversal, stay, vacatur, revocation, or amendment of the Interim Order without Standard Bank's consent;

    e. Material variance over four consecutive weeks from the Budget in excess of 10% over a line item scheduled in the Budget or in excess of 10% over the overall Budget;

    f. Dismissal of the chapter 11 case or conversion of the case to chapter 7 of the Bankruptcy Code; and

    g. The violation by the Debtor of any material term of the Interim Order where such violation remains unremedied for ten (10) business days following receipt by the Debtor from Standard Bank of such violation.

    10. Rights and Remedies Upon an Event of Default. Upon the occurrence and continuation of an Event of Default, Standard Bank may deliver a written notice of its intention to declare a termination, reduction, or restriction of the Debtor's ability to use Cash Collateral (any such declaration, shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtor, counsel to any statutory committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"), and the automatic stay under section 362 of the Bankruptcy Code is hereby vacated to allow the delivery of the Termination Declaration. The Debtor shall have ten (10) business days from the Termination Declaration Date to cure such Event of Default (the "Remedies Notice Period"). During the Remedies Notice Period, the Debtor may use Cash Collateral pursuant to the terms of this Interim Order.

Unless the Court determines during Remedies Notice Period that an Event of Default has not occurred, the automatic stay shall automatically be terminated upon the expiration of the Remedies Notice Period without further notice or order, the Debtor shall no longer have the right to use or seek to use Cash Collateral, and Standard Bank shall be permitted to (i) terminate the Debtor's use of any Cash Collateral, (ii) declare all accrued adequate protection payment obligations to be immediately due and payable, and/or (iii) take any other actions or exercise any other remedies set forth herein or in the Loan Documents or as otherwise available at law (subject to the terms of this Interim Order), against the Collateral without further action, notice, or order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens on and security interest in the Collateral or any other rights and remedies granted to Standard Bank with respect thereto pursuant to the Loan Documents, this Interim Order or applicable law, rule or regulation, as applicable; provided, however, that in no event shall an Event of Default or the termination of this Interim Order (or any final order) affect, limit, or modify the Carve Out.

    11. Carve Out. As used in the Interim Order, "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii)

below); (ii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Estate Professional Fees") incurred by persons or firms retained pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Professionals") up to $150,000.

12. Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims. Subject to the right of certain parties to Challenge (as defined herein), the Debtor's acknowledgements, stipulations, and waivers contained in this Interim Order, including, without limitation, the Stipulations, shall be binding upon the Debtor and its estate and any representatives, successors and assigns thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtor), and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

13. No Third Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any creditor, equity holder, or other person or entity, or any direct, indirect, or incidental beneficiary, other than Standard Bank.

14. No Liability to Third Parties. Standard Bank shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or be acting as a "controlling person," "responsible person," "owner or operator," or "participant" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute or regulation), or (b) shall owe any fiduciary duty to the Debtor, its creditors, or its estate, or be deemed to constitute a joint venture or partnership with the Debtor.

15. Rights Preserved. Notwithstanding anything herein to the contrary, if at any time the Interim Order is no longer in full force or effect (or, with respect to Standard Bank, upon the Termination Declaration Date), or the Debtor has sought to amend, modify, supplement, or extend this Interim Order over the objection of Standard Bank, then neither the entry of this Interim Order nor anything herein shall prejudice, or constitute a waiver of, expressly or implicitly: (a) the right of Standard Bank to seek any other or supplemental relief in respect of the Debtor, including the right to seek and receive additional adequate protection; (b) any rights of Standard Bank under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of this chapter 11 case or any successor case, conversion of this chapter 11 case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan, or (iv) submit a credit bid in respect of any sale of any Collateral pursuant to the immediately preceding paragraph; and nothing contained herein shall be deemed a finding by the Court or an acknowledgement by Standard Bank that the adequate protection granted herein does in fact adequately protect Standard Bank.

16. No Waiver by Failure to Seek Relief. The failure of Standard Bank to seek relief or otherwise exercise its rights and remedies under this Interim Order or the Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of Standard Bank's rights under this Interim Order or the Loan Documents or applicable law.

17. Binding Effect of Interim Order. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim

Order shall become valid and binding upon and inure to the benefit of the Debtor, Standard Bank, all other creditors of any of the Debtor, any statutory committee appointed in this Chapter 11 case, and all other parties in interest, and their respective successors and assigns, including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor, in this Chapter 11 case, any successor case, or upon dismissal of this Chapter 11 case or any successor case.

18. Interim Order Governs. The terms of this Interim Order shall govern the use of Cash Collateral and nothing contained herein shall require the Debtor to comply with the Loan Documents as a condition to the use Cash Collateral. In the event of any inconsistency between the provisions of this Interim Order and the Loan Documents or any other order (including any "First Day" order), the provisions of this Interim Order shall govern and control. Any payments to be made under any order (including any "First Day" order) shall be made in accordance with this Interim Order and the Budget.

19. Effect of Dismissal of Chapter 11 Case. If this Chapter 11 case is dismissed, converted, or transferred, such dismissal, transfer, or conversion shall not affect the rights of the Debtor or Standard Bank under this Interim Order, and all of their rights and remedies thereunder shall remain in full force and effect as if the Chapter 11 case had not been dismissed, converted, or transferred. If an order dismissing this Chapter 11 case is at any time entered, to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the rights and remedies granted to Standard Bank and the Debtor in this Interim Order, including rights under the Loan Documents, the Adequate Protection Lien and the Diminution Claim.

20. No Modification of Interim Order. In the event any or all of the provisions of this Interim Order are modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances previously made or made hereunder, uses of cash or Cash Collateral previously authorized or authorized hereunder, or lien, claim, or priority authorized or created hereby. Any liens or claims granted to Standard Bank arising prior to the effective date of any modification, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

21. Survival. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in this Chapter 11 case; (b) converting this Chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing this Chapter 11 case or any successor case; (d) discharging any Debtor; or (e) abstaining from hearing any of the Chapter 11 case or any successor case. The terms and provisions of this Interim Order, including the Stipulations and the claims, liens, security interests, and other protections granted to Standard Bank pursuant to this Interim Order, shall continue in the Chapter 11 case, in any successor case, or following dismissal or conversion of this Chapter 11 case or successor case, and shall maintain its priority as provided by this Interim Order until all obligations under the Loan Documents have been indefeasibly and irrevocably paid in full, notwithstanding the expiration of or termination of the Interim Order or termination of the Debtor's authorization to use Cash Collateral.

22. Effect of this Interim Order. This Interim Order shall take effect and be enforceable immediately upon its entry. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

23. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

24. Retention of Jurisdiction. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

Enter:

United States Bankruptcy Judge

Dated: DEC 0 4 2015

**Prepared by:**
Sugar Felsenthal Grais & Hammer LLP
Jonathan P. Friedland, Esq. (IL No. 6257902)
Mark S. Melickian, Esq. (IL No. 6229843)
Elizabeth B. Vandesteeg, Esq. (IL No. 6291426)
Jack O'Connor, Esq. (IL No. 6302674)
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400
Facsimile: 312.372.7951
jfriedland@SugarFGH.com
mmelickian@SugarFGH.com
evandesteeg@SugarFGH.com
joconnor@SugarFGH.com

Proposed Counsel to the Debtor

Rev: 20151029_bko

# Exhibit A

*Budget*

**Agri-Fine, Inc.**
**Six Week Cash Projection**

| Week # | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Week Ending | 11-Dec-15 | 18-Dec-15 | 25-Dec-15 | 01-Jan-16 | 08-Jan-16 | 15-Jan-16 |
| **Cash Receipts** | | | | | | |
| Customer Payments - new shipments | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 |
| Customer Payments - pre-petition | 50,000 | 25,000 | 25,000 | | | |
| Total Cash Receipts | 180,000 | 155,000 | 155,000 | 130,000 | 130,000 | 130,000 |
| **Cash Disbursements** | | | | | | |
| Raw Materials | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| Chemicals | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 |
| Freight | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Payroll and Taxes | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| Insurance | 4,300 | 28,700 | 23,300 | | | 28,700 |
| Tank car rental | - | - | 31,000 | - | - | - |
| Agri-tranist | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| American Express | | | 2,000 | | | 2,000 |
| Uniforms | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Bank Charges and Interest | | | | 22,500 | | |
| Repairs, parts, supplies | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Utilities | 10,000 | 15,000 | 3,200 | | 12,100 | 25,000 |
| Vehicle payments | | 800 | | | | 800 |
| Lab supplies | 500 | 500 | 500 | 500 | 500 | 500 |
| US Trustee | | | | | | |
| Total Cash Disbursements | 126,000 | 156,200 | 171,200 | 134,200 | 123,800 | 168,200 |
| Net Cash for Week | 54,000 | (1,200) | (16,200) | (4,200) | 6,200 | (38,200) |
| Cumulative Net Cash | 54,000 | 52,800 | 36,600 | 32,400 | 38,600 | 400 |

SFGH:4817-0719-4411v1